IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA


SOUTHCO, INC.                    :        CIVIL ACTION
                                 :
          v.                     :
                                 :
FIVETECH TECHNOLOGY INC.         :        NO. 10-1060


MEMORANDUM

McLaughlin, J.                              January 10, 2011


          This dispute concerns the exercise of personal

jurisdiction over defendant Fivetech Technology Inc., a Taiwanese

corporation with its principal place of business in Taipei,

Taiwan.  In the underlying action, plaintiff Southco, Inc.,

asserts claims for patent and trademark infringement against the

defendant.  The plaintiff contends that the defendant sold

infringing panel fasteners (screws) in Pennsylvania and the

United States.  The defendant moves to dismiss for lack of

personal jurisdiction, contending that it does not conduct

regular business with the United States and does not have

"minimum contacts" sufficient to warrant personal jurisdiction.

For the reasons that follow, the Court will deny the motion to

dismiss.


I.   Jurisdictional Facts

          The plaintiff, Southco, Inc. ("Southco"), is a Delaware

corporation with its principal place of business in Pennsylvania.

Defendant Fivetech Technology, Inc. ("Fivetech") is a Taiwanese

corporation with its principal place of business in Taipei, Taiwan.  Decl. of Jessie P. Wang ("J. Wang Decl.") ¶ 4, Ex. to Def.'s Mot. to Dismiss ("Def.'s Mot.").  Both companies manufacture mechanical parts, including "panel fasteners," which are a type of screw.  Compl. ¶ 6; J. Wang. Decl. ¶ 5.  Of relevance to this action is the defendant's 46 Series of panel fasteners, which is the subject matter of the underlying infringement suit.  Compl. ¶¶ 8-10; Decl. of Helen H. Wang ("H. Wang Decl.") ¶ 3, Ex. to Def.'s Mot.

The plaintiff is the assignee of three patents covering the inventions used in its panel fasteners, and it has two registered trademarks for the "Segmented Circle" design that appears on its metal goods.[1]  Since 2007, the defendant has filed two trademark applications and eleven patent applications in the United States Patent and Trademark Office.  Decl. of Antranig Baronian ("Baronian Decl.") *passim*, Ex. to Pl.'s Opp'n.  However, the parties dispute the extent to which these applications relate

---

[1]The plaintiff is the assignee of the following patents: U.S. Patent Nos. 5,851,095; 6,280,131; 6,468,012.  Compl. ¶¶ 12, 20, 28.  The plaintiff has two registered trademarks for its Segmented Circle design: Nos. 2,478,685; 3,678,153.  Compl. ¶¶ 36, 41.

to the 46 Series screws at issue in the underlying suit.[2]

Notwithstanding its patent and trademark applications, the defendant neither conducts regular business nor maintains any offices, employees, or agents in the United States. J. Wang Suppl. Decl. ¶ 6. The defendant has never sold its products to any person or company in the United States, except for one transaction involving the sale of screws to a Pennsylvania-based corporation in 2009, which is not a party to the present action. Id.; G. Wang Decl. ¶¶ 5-6.

The defendant's sale to a Pennsylvania-based customer arose out of the defendant's website. In 2006, the defendant launched an English website that is accessible world-wide. J. Wang. Decl. ¶ 11. The website does not permit users to purchase products online or to engage in transactions, but it features a "Contact Us" function by which users can submit a form requesting information. Decl. of Stephanie M. Byerly ("Byerly Decl.") ¶ 5, Ex. to Def.'s Mot. On November 13, 2009, Specialty Resources, Inc. ("SRI"), a Pennsylvania corporation, employed the "Contact Us" feature to request a quote for 500 pieces of the defendant's

---

[2]The plaintiff refers to statements made in the defendant's trademark applications, wherein the defendant represented that its Series 46 screws had been sold in interstate commerce. Baronian Decl. ¶¶ 8, 9, 11, 12, 37. However, the defendant disputes the accuracy of these representations and denies that its 46 Series screws were ever sold in interstate commerce. Supplemental Decl. of Jessie P. Wang ("J. Wang Suppl. Decl.") ¶¶ 10-12, Ex. to Def.'s Reply; Decl. of Gary T. Wang ("G. Wang Decl.") ¶ 20, Ex. to Pl.'s Supplemental Br.

46 Series screws.  H. Wang Decl. ¶ 3.  After several e-mail exchanges between SRI and a representative of the defendant, SRI wired $384.50 to the defendant's bank account located in Taiwan. Id. ¶ 10.  The defendant subsequently shipped 500 46 Series screws to SRI, using SRI's international shipping account.  Id. ¶ 11.  The defendant did not enter into a warranty or ongoing purchase agreement with SRI, and did not respond to numerous future requests for information and quotes by SRI.  Id. ¶¶ 12-17.

Apart from the one sale to SRI, the majority of the defendant's customers are in Taiwan and China.  J. Wang. Decl. ¶ 5.  One such customer is Inventec, an original design manufacturer ("ODM")[3] for notebooks.  G. Wang Decl. ¶ 13. Inventec manufactures and sells computer servers to its customers, including Hewlett-Packard ("HP").  Inventec incorporates the defendant's 46 Series screws into some of its computer servers, and purchases the screws either directly from the defendant's catalog or provides the defendant with specifications based on customer requests.  Id. ¶¶ 14-15.  For instance, Inventec has requested that the defendant provide screws with knobs that are colored "HP Blue," for use in servers

---

[3]According to the defendant, ODMs design their own equipment and then sell the equipment to name-brand companies.  G. Wang. Decl. ¶ 13.  In contrast, the plaintiff contends that large companies, such as Hewlett-Packard, cooperate in the design and manufacture of any ODM product, and never purchase products designed exclusively by an ODM.  Decl. of Loic Cloarec ("Cloarec Decl.") ¶ 11, Ex. to Pl.'s Reply to Def.'s Supplemental Br.

sold to HP.  Id. ¶¶ 14-15, 18.  One such server incorporating the defendant's 46 Series screws is the HP ML350 G6 server, a sample of which the plaintiff purchased in the United States.  Decl. of Alex R. Sluzas ("Sluzas Decl.") ¶ 17, Ex. to Pl.'s Opp'n; see also J. Wang Suppl. Decl. ¶ 14.

Beyond these uncontroverted facts, the parties dispute the extent of the defendant's involvement in the arrangements between Inventec and HP.  The defendant maintains via declarations that HP is not its customer, and that the defendant has no involvement in the sales or distribution arrangements between Inventec and HP.  G. Wang. Decl. ¶ 16.  The defendant further contends that it has no control over the distribution of its screws once they are sold to Inventec, and has no knowledge with respect to where the screws will end up.  Id. ¶¶ 17-18.

In contrast, the plaintiff contends by way of declarations that HP is, in fact, the defendant's "customer," even if the defendant has no formal contract with HP.  Decl. of Loic Cloarec ("Cloarec Decl.") ¶ 8, Ex. to Pl.'s Reply to Def.'s Supplemental Br.  Specifically, the defendant participates in the construction of the HP server by providing screws that cannot be used in any other product in view of their distinctive "HP Blue" color.  Therefore, the defendant has a "business relationship" with HP.  Id.  Moreover, the plaintiff contends that because HP is Inventec's only customer for the aforementioned server, and

the defendant is Inventec's only supplier of screws for said server, then all of the HP ML350 G6 servers sold in the United States contain the defendant's screws. <u>Id.</u> ¶ 12. Finally, the plaintiff points out that thirty-seven percent of HP's quarterly revenue in 2010 was attributable to sales in the United States, and therefore the defendant must be aware that its products will end up in the United States. <u>Id.</u> ¶¶ 15-16; <u>see also</u> "HP Q3 FY10 Earnings Announcement," Ex. G to Cloarec Decl.

The plaintiff filed a complaint on March 10, 2010, alleging patent and trademark infringement based on the defendant's sales of the 46 Series screws. The plaintiff claims that the 46 Series screws embody the inventions covered by the plaintiff's patents. In addition, the plaintiff argues that the defendant employs a mark similar to the plaintiff's "Segmented Circle" design, which is a registered trademark. The defendant moved to dismiss the complaint for lack of personal jurisdiction. The Court held oral argument on September 9, 2010, and invited supplemental briefing on the jurisdictional inquiry, with particular regard to the defendant's relationship with Inventec and HP. For the reasons that follow, the Court will deny the motion to dismiss.

## II. <u>Lack of Personal Jurisdiction</u>

The defendant has moved to dismiss the complaint for

lack of personal jurisdiction, pursuant to Federal Rule of Civil Procedure 12(b)(2). The defendant submitted declarations to establish that it does not conduct business or have assets, offices, or employees in the United States. It further argues that the jurisdictional contacts on which the plaintiff relies are insufficiently substantial to establish jurisdiction.[4]

A.    Standard of Review

Questions of personal jurisdiction in patent actions are governed by Federal Circuit law, rather than the law of the regional circuit in which this Court sits. Synthes (U.S.A.) v. G.M. dos Reis Jr. Ind. Com. de Equip. Medico, 563 F.3d 1285, 1292 (Fed. Cir. 2009). When a court must decide a motion to dismiss for lack of personal jurisdiction on the basis of affidavits and written materials alone, in the absence of an evidentiary hearing, a plaintiff need only make a prima facie showing that a defendant is subject to personal jurisdiction. Elecs. for Imaging, Inc. v. Coyle, 340 F.3d 1344, 1349 (Fed. Cir. 2003). In deciding the motion, the Court must "accept the uncontroverted allegations in the plaintiff's complaint as true and resolve any factual conflicts in the affidavits in the plaintiff's favor." Id.

---

[4]As will be discussed below, the Court will analyze the defendant's contacts with the United States as a whole in conducting the personal jurisdiction analysis.

B.   Analysis

Federal Rule of Civil Procedure 4 is the starting point for any personal jurisdiction analysis in federal court. Synthes, 563 F.3d at 1293. Under Rule 4(k)(1)(A), service of process establishes personal jurisdiction over a defendant "who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located." Fed. R. Civ. P. 4(k)(1)(A). In conducting the personal jurisdiction inquiry under Rule 4(k)(1), a federal court analyzes the long-arm statute and governing principles of the forum state to determine whether jurisdiction has been established. Id.; see also Touchcom, Inc. v. Bereskin & Parr, 574 F.3d 1403, 1410 (Fed. Cir. 2009). This generally encompasses two steps. The court must first determine whether the forum state's long-arm statute authorizes personal jurisdiction. The court must then determine whether the exercise of personal jurisdiction comports with constitutional due process. Touchcom, 574 F.3d at 1411.

In contrast, Rule 4(k)(2) applies when a defendant is not subject to jurisdiction in any state's courts of general jurisdiction. Rule 4(k)(2) permits a federal court to exercise personal jurisdiction over a defendant who has been served with process if three requirements are met: "(1) the plaintiff's claim arises under federal law, (2) the defendant is not subject to jurisdiction in any state's courts of general jurisdiction, and

(3) the exercise of jurisdiction comports with due process."
Synthes, 563 F.3d at 1293-94. Rule 4(k)(2) was designed to close
a loophole whereby a defendant who was a non-resident of the
United States could escape jurisdiction by virtue of the fact
that it had insufficient contacts with any single state, even
though it had sufficient contacts with the United States as a
whole. See Fed. R. Civ. P. 4(k)(2) advisory committee notes to
1993 amendment; Synthes, 563 F.3d at 1295-96. Rule 4(k)(2),
therefore, serves as a federal long-arm statute, and ensures that
"federal claims will have a U.S. forum if sufficient national
contacts exist." Touchcom, 574 F.3d at 1414 (citing Synthes, 563
F.3d at 1295). When Rule 4(k)(2) applies, a court examines a
defendant's contacts with the United States as a whole. Synthes,
563 F.3d at 1296.

The Court will apply Rule 4(k)(2) to the present
inquiry, because both parties contend, and the Court agrees, that
Rule 4(k)(2) should govern the analysis. Def.'s Supplemental Br.
at 1; Pl.'s Opp'n at 1. First, it is undisputed that the
plaintiff's claim arises under federal law. With respect to the
second requirement, the Federal Circuit has interpreted Rule
4(k)(2) as placing a burden on the defendant, who can "avoid the
application of the rule only when it designates a suitable forum
in which the plaintiff could have brought suit." Touchcom, 574
F.3d at 1415. In other words, the defendant must name one state

in which it is subject to jurisdiction in order to avoid Rule
4(k)(2). <u>Id</u>. In this case, the defendant contends that it is
not subject to jurisdiction in any state court of general
jurisdiction. Having failed to designate an alternative state
forum in which the plaintiff could have brought suit, the Court
concludes that the second requirement of Rule 4(k)(2) is
satisfied. <u>See Touchcom</u>, 574 F.3d at 1415.

Therefore, the only question before the Court is with
respect to the third requirement of Rule 4(k)(2) - whether the
exercise of jurisdiction comports with constitutional due
process. In order to be subject to personal jurisdiction, due
process requires that a defendant have certain "minimum contacts"
with the forum "such that the maintenance of the suit does not
offend traditional notions of fair play and substantial justice."
<u>Synthes</u>, 563 F.3d at 1296 (quoting <u>Int'l Shoe Co. v. Washington</u>,
326 U.S. 310, 316 (1945)). This requirement ensures that a non-
resident has fair warning that a particular activity may subject
it to litigation within the forum. <u>Beverly Hills Fan Co. v.
Royal Sovereign Corp.</u>, 21 F.3d 1558, 1565 (Fed. Cir. 1994).

A defendant's contacts with the forum can provide a
court with general jurisdiction or specific jurisdiction.
<u>Synthes</u>, 563 F.3d at 1297. General jurisdiction requires that a
defendant have "continuous and systematic" contacts with the
forum. "Continuous and systematic" contacts confer jurisdiction

even when the cause of action has no relationship with those contacts.  Id. at 1297 (citing Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 416 (1984)).  In contrast, where the defendant has engaged in more limited forum-related activities and the plaintiff's cause of action arises from or relates to those contacts, the defendant may be subject to specific jurisdiction.  See Synthes, 563 F.3d at 1297.

The plaintiff does not contend that this Court has general jurisdiction over the defendant, but rather argues that the Court may exercise specific jurisdiction over the defendant. Therefore, the Court will limit its inquiry to specific jurisdiction using the United States as a whole as the forum for examining the defendant's contacts.

The Federal Circuit has outlined a three-factor test for determining whether a defendant is subject to specific jurisdiction.  This Court must consider whether (1) the defendant purposefully directed its activities at residents of the forum, (2) the claim arises out of or relates to the defendant's activities with the forum, and (3) assertion of personal jurisdiction is reasonable and fair.  Elecs. for Imaging, Inc. v. Coyle, 340 F.3d 1344, 1350 (Fed. Cir. 2003).  The plaintiff bears the burden with respect to the first two prongs, which correspond to the requirement that a defendant must have "minimum contacts" with the forum.  If the plaintiff establishes "minimum contacts,"

the defendant bears the burden of showing that the exercise of jurisdiction is unreasonable under the third prong.  Id.

### 1.  Purposefully Directed Activities

Whether the defendant has purposefully established "minimum contacts" in the forum state is the "constitutional touchstone" of the Court's inquiry.  Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474 (1985) (citations omitted).  The plaintiff must accordingly demonstrate that the defendant "purposefully directed" its activities towards the forum or otherwise "purposefully avail[ed] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws."  Avocent Huntsville Corp. v. Aten International Co., 552 F.3d 1324, 1329 (Fed. Cir. 2008) (quoting Hanson v. Denckla, 357 U.S. 235, 253 (1958)).  The requirement of purposeful availment ensures that a defendant "will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts, or of the unilateral activity of another party or a third person."  Id. (quoting Burger King Corp., 471 U.S. at 475).

The purposeful availment prong is at the heart of the present dispute, in which the parties primarily focus on two jurisdictional contacts: the defendant's sale of screws to Inventec for use in the HP ML350 G6 server, and its one-time sale

of screws to SRI in Pennsylvania.[5]  The defendant maintains that

this action must be dismissed because these two contacts do not

constitute purposeful availment of the forum.  With respect to

the sale of screws to Inventec, the defendant contends that it

has no control over the distribution of the servers in which the

screws are incorporated.  It does not know where the servers will

be sold, or have any interest in the arrangements between

Inventec and HP.  Instead, the defendant has only a general

awareness that some of the servers incorporating its screws may

be sold in the United States.  The defendant contends that mere

foreseeability, without more, cannot constitute purposeful

availment of the forum under the case law.  Moreover, with

respect to the one-time sale of screws to SRI, the defendant

contends that an isolated sale for $384.50 is insufficiently

substantial to support jurisdiction, and should not enter into

the analysis.

In contrast, the plaintiff argues that the defendant

has purposefully availed itself of the United States by placing

its screws into the stream of commerce.  It argues that the

defendant sells its screws to Inventec with the expectation that

they will be incorporated into servers and sold in the United

---

[5]In addition to these two contacts, the parties dispute the
significance of other minor jurisdictional contacts, such as the
defendant's website and its patent and trademark applications
filed in the United States.

States, in view of HP's large market share in the United States.[6] The plaintiff argues that not only does the defendant expect its screws to end up in the forum, but it has taken active steps to avail itself of the forum, such as directly selling its 46 Series screws to SRI. According to the plaintiff, this Court has jurisdiction based on the "stream of commerce" theory.

The Supreme Court first addressed the question of whether the placement of goods into the "stream of commerce" can constitute purposeful availment in World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286 (1980). In Woodson, the Supreme Court found personal jurisdiction to be lacking where the defendant seller's products were transported into the forum state through the unilateral actions of a third party, who had no pre-existing relationship with the defendant.[7] Woodson, 444 U.S. at 298. However, the Court noted that where the sale of a product is not simply an isolated occurrence, but arises from the defendant's

_____

[6]In addition, the plaintiff contends that the defendant is the exclusive supplier of screws to Inventec for the HP server. However, the defendant disputes this fact and contends that Inventec has other suppliers. Compare Cloarec Decl. ¶ 12 with G. Wang Decl. ¶ 14. The Court will address this dispute more fully below.

[7]Specifically, a retail car dealer and local distributor that served New York, New Jersey, and Connecticut were not subject to jurisdiction in Oklahoma because a single car sold by the dealer to a New York resident happened to suffer an accident while driving through Oklahoma. Without evidence that the defendants tried to serve the Oklahoma market, this isolated incident did not constitute purposeful availment of the forum. Woodson, 444 U.S. at 568.

efforts "to serve, directly or indirectly, the market for its product in other States," it would not be unreasonable to conclude that a seller has purposefully availed itself of the forum. Id. at 297. Thus, personal jurisdiction may lie over a seller "that delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State." Id. at 297-98.

After Woodson, courts split over the precise requirements of the stream of commerce theory. In Asahi Metal Indus. Co., Ltd. v. Super. Ct. of Cal., 480 U.S. 102 (1987), the Supreme Court revisited the contours of this theory. The question was whether a foreign defendant's mere awareness that the components it manufactured would reach the forum state was sufficient for a finding of minimum contacts. Asahi, 480 U.S. at 105. The defendant, a Japanese tire valve manufacturer, sold valve assemblies to a Taiwanese company, which in turn incorporated the valves into finished tires and sold them worldwide, including to a purchaser in California who was injured as a result of a defect. Asahi, 480 U.S. at 105-06. In analyzing whether the Japanese manufacturer could be subject to personal jurisdiction in California, the Supreme Court presented two different tests for purposeful availment through the stream of commerce. However, neither test garnered a majority of votes, with Justices O'Connor and Brennan each writing for pluralities

of four.  Under Justice O'Connor's test, the placement of a
product into the stream of commerce, without more, does not
demonstrate that a defendant "purposefully directed" its
activities toward the forum.  Id. at 112.  Even if a defendant is
aware that its product may end up in the forum state, the
placement of a product into the stream of commerce must be
accompanied by additional conduct, such as

> designing the product for the market in the forum
> State, advertising in the forum State,
> establishing channels for providing regular advice
> to customers in the forum State, or marketing the
> product through a distributor who has agreed to
> serve as the sales agent in the forum State.

Id.

Under Justice Brennan's test, a showing of "additional
conduct" is unnecessary.  Although his approach maintains the
requirement that the defendant avail itself of the forum state,
Justice Brennan noted that "[a]s long as a participant in this
process is aware that the final product is being marketed in the
forum State, the possibility of a lawsuit there cannot come as a
surprise."  Id. at 117.

In view of the conflicting approaches set forth in
Asahi, the Federal Circuit has not adopted a position with
respect to whether the placement of a product into the stream of
commerce coupled with mere awareness of its potential destination
is sufficient, or whether additional conduct is required.  See,
e.g., Avocent Huntsville Corp. v. Aten International Co., 552

F.3d 1324, 1332 (Fed. Cir. 2008) (citations omitted) (noting that Federal Circuit has not resolved the split in authority reflected in Asahi).  In cases where the Federal Circuit has asserted personal jurisdiction based on the stream of commerce theory, the defendants' contacts have been sufficient to satisfy the more stringent test articulated by Justice O'Connor.

A principal Federal Circuit case finding jurisdiction based on the stream of commerce theory is Beverly Hills Fan Co. v. Royal Sovereign Corp., 21 F.3d 1558 (Fed. Cir. 1994).  Indeed, the plaintiff relies primarily on Beverly Hills in support of its argument.  In Beverly Hills, the question was whether a China-based ceiling fan manufacturer and its New-Jersey based distributor could be subject to jurisdiction in Virginia in a patent infringement action.  The China-based manufacturer had no assets or employees in Virginia, nor had it directly shipped the infringing fans into the forum.  Id. at 1560.  However, the manufacturer sold the fans to its distributor, who in turn shipped the fans to Virginia for sale in retail outlets.  Id. at 1560, 1563-64.  At least fifty-two of the manufacturer's fans were present at retail locations in Virginia, and they bore the distributor's warranty.  Id. at 1564.

Based on these facts, the Federal Circuit concluded that both tests set forth in Asahi were satisfied.  The Court noted that the presence of fifty-two fans in Virginia, coupled

17

with the distributor's warranty, reflected "ongoing relationships" with the forum.  Based on these ongoing relationships, the Court presumed that the defendants had intentionally established a "distribution channel" by which the goods would arrive in the forum.  Beverly Hills, 21 F.3d at 1564. In other words, the presence of the fans in Virginia was not an isolated occurrence, but arose from the defendants' intentional efforts to send goods into the forum.  Id. at 1566.  Concluding that it could assert jurisdiction over the defendants, the Court reasoned that the defendants "placed the accused fan in the stream of commerce, they knew the likely destination of the products, and their conduct and connections with the forum state were such that they should reasonably have anticipated being brought into court there."  Id. at 1566.

The plaintiff argues that Beverly Hills should govern this case.  Like the manufacturer in Beverly Hills, the defendant sold its screws through intermediaries, Inventec and HP.  In view of HP's large market share in the United States, the defendant was aware that the forum was a likely destination for its screws. In addition, the plaintiff contends that the defendant's arrangement with the intermediaries was at least as exclusive as the manufacturer's distribution agreement in Beverly Hills, because the defendant is the exclusive supplier of screws to Inventec for the HP ML350 G6 server.  Taken together, the

18

plaintiff argues that these facts establish an intentional conduit into the forum and an ongoing relationship therewith. The plaintiff additionally argues that the defendant has undertaken additional conduct to serve the forum, including the sale of 46 Series screws to SRI.

The defendant argues that the Court should distinguish Beverly Hills and instead rely on Davlyn Mfg Co. v. H&M Auto Parts, Inc., 414 F. Supp. 2d 523 (E.D. Pa. 2005).[8] In Davlyn, the Court declined to exercise personal jurisdiction based on the stream of commerce theory. The defendant manufactured oven gaskets and clips, which it sold to a nationwide oven distributor. The distributor in turn sold ovens incorporating the allegedly infringing gaskets in Pennsylvania. Davlyn, 414 F. Supp. 2d at 528-29. The Court adopted Justice O'Connor's test from Asahi and declined to assert jurisdiction over the manufacturer, reasoning that the plaintiff had demonstrated no more than a "general awareness" that the defendant's goods might be incorporated in products that end up in Pennsylvania. Id. at 530. The Court found no evidence of additional conduct by the defendant, such as warranties, marketing of the products in the forum, or identifying the products as originating from the

---

[8]The defendant acknowledges that Davlyn is not binding on this Court, which must follow Federal Circuit precedent. Nonetheless, the defendant argues that the facts in Davlyn are parallel to this case and should guide the outcome.

defendant.  Id. at 530-31.  In addition, the defendant did not

enjoy an exclusive distribution arrangement, as it was just one

of several companies that provided gaskets for the distributor's

ovens.  Id.

The defendant relies on the following parallels to

Davlyn.  The defendant contends that it has only a general

awareness that its products may end up in the United States.  The

defendant does not have an exclusive channel for distribution

into the forum, because it is one of several companies that

provides screws for use in Inventec's servers.  Moreover, the

defendant has not engaged in any additional conduct to serve the

forum.  Specifically, the defendant has not entered into any

warranties, it has not marketed its products in the forum, and it

has not directly shipped its products into the forum, other than

the single sale of 46 Series screws to SRI.  According to the

defendant, an exercise of jurisdiction would be based on mere

foreseeability.

The Court concludes that the plaintiff has made a prima

facie showing of purposeful availment based on Beverly Hills and

Asahi.  As an initial matter, the plaintiff has presented

evidence to establish that the defendant is at least aware that

its products are likely to end up in the United States.  Based on

the defendant's own admissions, it has provided 46 Series screws

to Inventec with knobs designed to match the "HP Blue"

specification.  G. Wang Decl. ¶ 15; <u>see also</u> Ex. C to Cloarec
Decl. (defendant's manufacturing drawing for screws sold to
Inventec with "HP Blue" specification).  Therefore, the defendant
knows that its screws will be used in HP products.  In addition,
the defendant acknowledged that "[i]t seems obvious that some HP
servers will end up in the United States."  <u>Id.</u> ¶ 18.  This
awareness is further reinforced by the fact that HP has a large
market share in the United States.  Cloarec Decl. ¶¶ 15-16; <u>see</u>
<u>also</u> "HP Q3 FY10 Earnings Announcement", Ex. G to Cloarec Decl.

　　　　The plaintiff has also presented evidence that
establishes more than mere awareness on the part of the
defendant.  As noted above, the plaintiff relies in part on
disputed facts to make this showing.  The plaintiff has submitted
declarations contending that the defendant is the exclusive
supplier of screws for the HP server, providing:

> Inventec has only one supplier of slate-blue captive
> screws for the HP ML350 G6 server and that supplier is
> Fivetech.  Therefore, all HP ML350 G6 servers sold by
> HP in the United States will contain Fivetech captive
> screws.

Cloarec Decl. ¶ 12.  Although the defendant has submitted
declarations to dispute this fact, its declarations are broad and
fail to address or negate the plaintiff's contentions with
particularity.  The defendant relies on the declaration of
Fivetech President Gary Wang, which provides:

Although Inventec buys captive screws from Fivetech, I
understand that Inventec also buys captive screws from
Southco and PEM.  Inventec may also buy form [sic]
other local Taiwan and Chinese manufacturers.  I
understand that Inventec has a number of server
customers including HP.

G. Wang Decl. ¶ 14.  The defendant's declaration does not provide

specifics or even mention the HP ML350 G6 server.  While Inventec

may indeed have other suppliers of screws for its servers, the

declaration does not address whether Inventec has other suppliers

of screws for the HP ML350 G6 server in question.  Therefore, the

declaration does not directly rebut the plaintiff's claims.

Because these facts are in dispute, the Court should

arguably resolve the dispute in favor of the plaintiff.  Elecs.

for Imaging, Inc. v. Coyle, 340 F.3d 1344, 1349 (Fed. Cir. 2003).

If this dispute were to be resolved in favor of the plaintiff,

the Court finds that this case would be governed by Beverly

Hills.  The evidence of an exclusive arrangement to supply screws

suggests an ongoing relationship between the defendant and the

forum.  Therefore, this case would be distinguishable from

Davlyn, where the defendant was one of several suppliers of

gaskets to the oven distributor.  Instead, the ongoing

relationship in this case would permit the Court to draw a

presumption that the defendant has sent its goods into the forum

via an established channel, similar to the facts in Beverly

Hills.  And, under Beverly Hills, such a relationship with the

forum would provide the defendant with "fair warning" that it
could be subject to suit.  Id. at 1565.

However, even apart from the dispute over whether the
defendant has an exclusive relationship with Inventec, the Court
concludes that the plaintiff has established sufficient
additional conduct by the defendant to satisfy Justice O'Connor's
test in Asahi.  Specifically, the defendant directly shipped its
46 Series screws into the forum when it sold 500 screws to SRI in
Pennsylvania.  The transaction with SRI did not occur as a result
of the unilateral action of a third party; instead, the defendant
directly transacted with SRI in the forum.  The Court finds this
to be additional, purposeful conduct on the part of the
defendant, such that the Court's exercise of jurisdiction does
not rest on foreseeability alone.

The Court does not find persuasive the defendant's
argument that the sale to SRI was too insignificant to count as
additional conduct in the stream of commerce analysis.   The
defendant argues that the sale to SRI was "random, fortuitous, or
attenuated" in view of its low monetary value – $384.50, or
approximately 0.01% of the defendant's annual revenue - and
therefore was not purposeful conduct.  The Court does not find
the value of the transaction to be dispositive.  In Synthes
(U.S.A.) v. G.M. dos Reis Jr. Ind. Com. de Equip. Medico, 563
F.3d 1285 (Fed. Cir. 2009), the Federal Circuit found that the

23

defendant purposefully availed itself of the forum by transporting infringing goods to a trade show, notwithstanding the fact that they were worth only $105 in total. Id. at 1300. Similarly, this Court concludes that the defendant had "fair warning" that its transaction with SRI could subject it to suit in the forum, notwithstanding its low monetary value. Therefore, the transaction constituted additional, purposeful conduct under Justice O'Connor's test.

Moreover, case law suggests that the sale to SRI alone could be a sufficient basis for personal jurisdiction, even absent facts supporting a stream of commerce analysis. Courts have concluded that a single sale into a forum by a non-resident defendant is sufficient to establish personal jurisdiction. In Precimed S.A. v. Orthogenesis, Inc., 2004 U.S. Dist. LEXIS 23357 (E.D. Pa. Nov. 17, 2004), the Court concluded that a California corporation purposefully availed itself of Pennsylvania by shipping a product into the forum. The Court asserted personal jurisdiction notwithstanding the defendant's lack of other contacts with the forum, and despite the fact that the plaintiff had "reached out" to the defendant to consummate the sale. Id. at *5. The Court found the fact that the defendant had shipped an allegedly infringing product to Pennsylvania one time was

sufficient to constitute purposeful availment.  Id. at *7-8.[9]

In contrast, the present case involves more than a one-time transaction into the forum.  Instead, the one-time transaction was coupled with the defendant's placement of goods into the stream of commerce with knowledge that the goods would be sold in the United States.  Because the defendant was both aware that its goods would be sold in the forum, and took additional steps to serve the forum, the Court finds that either test set forth in Asahi is satisfied.[10]

## 2.  Arises Out Of or Relates To

As noted above, specific jurisdiction requires not only that the defendant purposefully direct its activities at a forum, but also that the plaintiff's claim "arises out of or relates to" the defendant's contacts with the forum.  Elecs. for Imaging, Inc. v. Coyle, 340 F.3d 1344, 1350 (Fed. Cir. 2003).  There is no dispute that this requirement is satisfied.  The Series 46 screws that were both incorporated into the HP servers and sold directly

---

[9]See also Osteotech, Inc. v. Gensci Regeneration Sciences, Inc., 6 F. Supp. 2d 349, 354 (D.N.J. 1998) (concluding that non-resident corporation's direct sale of product into forum state was sufficient for personal jurisdiction, notwithstanding fact that sale was a one-time transaction that represented 0.05% of defendant's total sales).

[10]Because the Court concludes the plaintiff has made a prima facie showing of jurisdiction, it need not consider the other minor jurisdictional contacts in dispute, such as the defendant's website and its patent and trademark applications.

to SRI are precisely the products that give rise to the present action.  The plaintiff claims that the 46 Series screws infringe on its patents and trademarks.  Therefore, the plaintiff's claim "arises out of or relates to" the defendant's contacts with the forum.

3.    Reasonable and Fair

Because the Court has concluded that the plaintiff has established a prima facie showing of minimum contacts, the burden now shifts to the defendant to prove that the exercise of jurisdiction is constitutionally unreasonable.  Elecs. for Imaging, 340 F.3d at 1350.  To determine whether exercising personal jurisdiction would comport with "fair play and substantial justice," the Court considers five factors: (1) the burden on the defendant, (2) the forum's interest in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the states in furthering fundamental substantive social policies.  Synthes, 563 F.3d at 1299 (citing Burger King Corp. v. Rudzewicz, 471 U.S. 462, 477 (1985)).  The defendant must present a "compelling case that the presence of some other considerations would render jurisdiction unreasonable."  Burger King Corp., 471 U.S. at 477.

The defendant is unable to establish a "compelling case" that jurisdiction is unreasonable.  Instead, application of the five factors leads the Court to conclude that an exercise of personal jurisdiction would be both reasonable and fair.  The burden on the defendant is significant, insofar as the defendant will have to travel from Taiwan and submit itself to the United States' legal system.  See Asahi Metal Indus. Co., Ltd. v. Super. Ct. of Cal., 480 U.S. 102, 114 (1987).  However, the Supreme Court has noted that "progress in communications and transportation has made the defense of a suit in a foreign tribunal less burdensome."  World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 294 (1980) (quoting Hanson v. Denckla, 357 U.S. 235, 250-51 (1958)).  Further, through its retention of lawyers and its filing of patent and trademark applications, the defendant has availed itself of the United States' legal system and thus cannot claim complete ignorance thereof.  See Beverly Hills, 21 F.3d at 1569 (noting that Chinese manufacturer who had business dealings with New Jersey-based distributor could not profess ignorance of legal system).

Moreover, the burden on the defendant is outweighed by the remaining four factors.  With respect to the second and third factors, the Federal Circuit has repeatedly emphasized the United States' "substantial interest" in enforcing federal patent laws and "discouraging injuries that occur within its boundaries,

27

including injuries resulting from patent infringement." <u>Synthes</u>, 563 F.3d 1299 (citations omitted). Similarly, the plaintiff has a clear interest in protecting itself from patent and trademark infringement. <u>See</u> <u>id.</u>; <u>see also</u> <u>Elecs. for Imaging</u>, 340 F.3d at 1352 ("[Plaintiff] also has an undisputed interest in protecting itself from patent infringement.").

Finally, the Court finds that the fourth and fifth factors favor jurisdiction. "Both factors are concerned with the potential clash of substantive social policies between competing fora and the efficiency of a resolution to the controversy." <u>Synthes</u>, 563 F.3d at 1300 (quoting <u>Burger King Corp.</u>, 471 U.S. at 477). Viewing the United States as the forum, the Court finds no reason to believe that the "procedural and substantive interests of other nations" will be undermined by the exercise of personal jurisdiction in this action. <u>See</u> <u>Asahi</u>, 480 U.S. at 115. Moreover, the United States has an important interest in protecting its intellectual property regime.

Finally, Federal Circuit precedent is in accord with the Court's conclusion. In both <u>Synthes</u> and <u>Beverly Hills</u>, the Federal circuit found the burden on non-resident defendants (Brazilian and Chinese corporations, respectively), to be outweighed by the interests of both the forum states and the plaintiffs in enforcing the federal patent laws. <u>See</u> <u>Synthes</u>, 563 F.3d at 1299-1300; <u>Beverly Hills</u>, 21 F.3d at 1569.

28

In conclusion, the Court does not find this to be one of the "rare cases" where the plaintiff's and the forum's interests are outweighed by the burden on the defendant, such that an exercise of jurisdiction would be constitutionally unreasonable.  <u>Beverly Hills</u>, 21 F.3d at 1568.

III.  <u>Conclusion</u>

For the foregoing reasons, the Court concludes that the plaintiff has made a prima facie showing of personal jurisdiction, the exercise of which comports with due process requirements.  Accordingly, the Court will deny the motion to dismiss for lack of personal jurisdiction.

An appropriate order shall issue separately.