```
            IN THE UNITED STATES DISTRICT COURT
         FOR THE EASTERN DISTRICT OF PENNSYLVANIA


SOUTHCO, INC.                   :      CIVIL ACTION
                                :
       v.                       :
                                :
FIVETECH TECHNOLOGY INC.        :      NO. 10-1060
```

<u>MEMORANDUM</u>

McLaughlin, J.                                    November 12, 2013

The plaintiff in this case, Southco, Inc. ("Southco"), is a manufacturer of hardware, including "panel" or "captive" screws. The defendant, Fivetech Technology Inc. ("Fivetech"), is a competitor of Southco. Southco has alleged patent and trademark infringement by Fivetech. Before the Court is Fivetech's motion for partial summary judgment of noninfringement of U.S. Trademark Registrations 2,478,685 and 3,678,153 (Docket No. 198) and Southco's motion to supplement the record (Docket No. 231). The Court will grant the motion for partial summary judgment and deny as moot the motion to supplement.

I.   <u>Procedural History</u>

Southco is a manufacturer of hardware, including panel screws, which are also known as "captive screws" or "fastener screws." Compl. ¶¶ 6-7. Fivetech is a competitor of Southco. Answer ¶¶ 2, 7. Southco alleges that Fivetech has infringed its

patents and trademarks through the sale of Fivetech's captive fasteners.

More specifically, Southco alleges infringement on its patent number 5,851,095 ("the '095 patent") issued on December 22, 1998; on its patent number 6,280,131 ("the '131 patent") issued on August 28, 2001; on its patent number 6,468,012 ("the '012 patent") issued on October 22, 2002; and on its Trademark registrations numbers 2,478,685 and 3,678,153. Compl. ¶¶ 11-18 ('095 patent), 19-26 ('131 patent), 27-34 ('012 patent), 35-44 (trademark).

The Court granted summary judgment in favor of Fivetech on both the '095 and '131 patent claims. (Docket Nos. 185, 186, 194, 195). The Court also granted summary judgment in favor of Fivetech on the '012 patent claims. (Docket Nos. 250, 251). The Court now considers Southco's motion to supplement the record (Docket No. 231) and Fivetech's motion for partial summary judgment of noninfringement of U.S. Trademark Registrations 2,478,685 and 3,678,153 (Docket No. 198).

II. Summary Judgment Record

Southco has two registered trademarks for the "Segmented Circle" design that appears on its fasteners. Compl., Ex. E, F; Def. Br. at 2, ECF No. 198. On some of its fasteners, Fivetech uses a "Five Pentagon" mark, which Southco alleges infringes on the Segmented Circle design. Compl., Ex. A; Def. Br. at 2.

The primary issue in this summary judgment motion is whether Fivetech's Five Pentagon mark was used in United States commerce, so that the Lanham Act applies. The parties do not dispute the relevant facts, but argue whether those facts show use in commerce. There are four possible uses of Fivetech's Five Pentagon mark in United States commerce.

A. Sale of Captive Screws to SRI

In December 2009, Fivetech sold 500 fasteners to a company called Specialty Resources, Inc. ("SRI") in Pennsylvania. Def. Mot. Dismiss, Hsinyi Wang Decl. ¶ 11, ECF No. 23-3. Following this sale, a Fivetech employee sent an SRI employee price quotes on other Fivetech fasteners, but Fivetech never sold SRI any additional products. Id. ¶¶ 16-17. The 500 fasteners sold to SRI did not feature Fivetech's Five Pentagon

mark.  Def. Reply Mot. Dismiss, Supplemental J. Wang Decl. ¶ 12, ECF No. 26-1.

    B.    <u>Fivetech's Patent Application</u>

On March 25, 2010, Mr. Steven Rabin, a lawyer acting on behalf of Fivetech, filed a trademark application for the Five Pentagon mark with the United States Patent and Trademark Office.  Pl. Opp. Mot. Dismiss, Ex. B, ECF No. 24-2.  In response to a prompt, the application states that the "first use in commerce" of the Five Pentagon mark was "[a]t least as early as 03/10/2010" and that the Five Pentagon mark was in use in commerce at the time of the application.  <u>Id.</u>  The application was withdrawn and abandoned on June 24, 2010.  Def. Mot., Allen Decl., Ex. J, ECF No. 198-11.  Fivetech's president, Gary Wang, did not know that this application was filed, and according to Mr. Wang, Fivetech "does not use its mark in commerce in the United States, since Fivetech does not market or sell products in the United States."  Def. Mot. Dismiss Supplemental Br., G. Wang Decl. ¶ 20, ECF No. 44-1.

### C. Fivetech's Website and Catalogue

Fivetech's online catalogue, available on its website and therefore accessible from the United States, includes descriptions of fasteners bearing the Five Pentagon mark. Compl., Ex. A, ECF No. 1-1. This document is an exhibit attached to Southco's Complaint, but there is no accompanying affidavit to explain what it is or from where it came.

### D. The HP Servers

Fivetech sells its captive fasteners bearing the Five Pentagon mark to its customers in Asia, such as Inventec, who incorporate those captive fasteners into computer servers sold to companies such as Hewlett-Packard ("HP"). HP servers containing Fivetech's fasteners are sold in the United States. Def. Mot. Dismiss Supplemental Br., G. Wang Decl. ¶¶ 16-18, ECF No. 44-1; Pl. Opp. Mot. Dismiss, Sluzas Decl. ("First Sluzas Decl.") ¶ 17, ECF No. 24-1; Pl. Second Mot. Compel Disc. Resps., Sluzas Decl. ("Second Sluzas Decl.") ¶ 11, ECF No. 196-1. Although Fivetech does not sell these fasteners directly to HP, it does tailor the fastener to their needs, for example, by selling Inventec fasteners in "HP Blue" the color HP uses in its servers. Pl. Reply Mot. Dismiss Supplemental Br., Cloarec Decl.

¶¶ 8-10, ECF No. 45-1.  Fivetech's Five Pentagon mark is used on the captive screws in at least some of those HP servers.  First Sluzas Decl., Ex. K; Def. Br. at 6.[1]

III. Analysis

Fivetech argues that (1) its Five Pentagon mark has never been used in United States commerce, and therefore the Lanham Act does not apply; and (2) even if the Lanham Act applies, Southco could not prevail on its trademark infringement claim because there has been no showing of facts that support a likelihood of confusion between Fivetech's Five Pentagon mark and Southco's Segmented Circle mark.

Southco argues that the Lanham Act applies, because the Five Pentagon mark has been used in United States commerce, or the substantial effect of its use abroad supports this Court's exercise of extraterritorial jurisdiction.  Southco also argues that there is a triable issue on likelihood of confusion.

---

[1] In addition, a declaration by one of Southco's employees purports to attach photographs of captive screws with the Fivetech Five Pentagon mark in another company's servers.  Pl. Opp. at 11, ECF No. 204; see also Riblett Decl., ECF No. 205 (under seal).  The Court notes that there is no evidence substantiating that these photographs show another company's server, and other photographs suggest that the screw may belong to an HP server.

The Court concludes that the Lanham Act does not apply here because Fivetech's Five Pentagon mark has not been used in United States commerce and it has not had a substantial effect on United States commerce.

A.  Applicability of the Lanham Act

The purpose of the Lanham Act is twofold: to protect consumers from purchasing a good that deceptively appears to be the genuine trademarked good, but is not; and to protect the trademark holder's investment in goodwill, which is undermined by imitation goods. Weil Ceramics & Glass, Inc. v. Dash, 878 F.2d 659, 672 (3d Cir. 1989).

The Lanham Act applies to "use in commerce" of "any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive . . . ." 15 U.S.C. § 1114(1)(a). Under the Act, "commerce" means "all commerce which may lawfully be regulated by Congress." Id. § 1127. A "mark shall be deemed to be in use in commerce-- (1) on goods when-- (A) it is placed in any manner on the goods or their

containers or the displays associated therewith or on the tags or labels affixed thereto, or if the nature of the goods makes such placement impracticable, then on documents associated with the goods or their sale, and (B) the goods are sold or transported in commerce . . . ." Id.

Absent unusual circumstances, advertising alone is not enough to constitute "use in commerce" because the statute requires that the good itself be sold or transported in commerce. See Buti v. Perosa, S.R.L., 139 F.3d 98, 105 (2d Cir. 1998) ("[T]he mere advertising or promotion of a mark in the United States is insufficient to constitute 'use' of the mark 'in commerce,' within the meaning of the Lanham Act."); see also Int'l Bancorp, LLC v. Societe des Bains de Mer et du Cercles des Etrangers a Monaco, 329 F.3d 359, 364 (4th Cir. 2003).

Thus, neither Fivetech's website, product catalogue, nor price quotes to SRI can constitute "use in commerce" of the Five Pentagon mark. None of these involved the Five Pentagon mark being sold or transported in United States commerce. Likewise, the sale of 500 fasteners to SRI is not relevant, as those fasteners did not contain the Five Pentagon mark. Pl. Reply at 4 n.4, ECF No. 211.

Southco's argument that the offer to sell goods in the United States can constitute infringement under the Lanham Act is correct, but the issue here is whether an offer to sell goods is a "use in commerce" that brings the defendant's actions within the purview of the Act. It is not.

The next possible use in United States commerce, the use of the Fivetech's Five Pentagon mark in HP servers sold in the United States, is addressed below as an issue of extraterritorial jurisdiction.

The last remaining use of Fivetech's Five Pentagon mark that could support its use in United States commerce is the sworn statement of attorney Rabin, in Fivetech's trademark application, that Fivetech's Five Pentagon mark was used in United States commerce.

The Court concludes that no reasonable jury could find that Fivetech's Five Pentagon mark was used in United States commerce solely on the basis of the trademark application. The application was withdrawn three months after it was filed. The president of Fivetech did not know the application was made, nor did he know that Rabin had been hired by his local counsel. In the initial briefing on the motion for partial summary judgment, Southco offered no evidence that supported Mr. Rabin's statement

that the Five Pentagon mark was sold in United States commerce beyond the few instances discussed here.

The Court denies as moot, as discussed below, Southco's motion to supplement the record on this issue, because the Court concludes that the new information does not change the result that there is no use of Fivetech's Five Pentagon mark in United States commerce.

B.  Extraterritorial Jurisdiction Under the Lanham Act

Southco argues that this Court should exercise extraterritorial jurisdiction under the Lanham Act. The Supreme Court first examined the extraterritorial reach of the Lanham Act in 1952 in Steele v. Bulova Watch Co., 344 U.S. 280 (1952). In Bulova, the Court held that the Lanham Act applied to a United States citizen who sold watches bearing the plaintiff's trademark in Mexico. The Court held that his operations affected United States commerce because he bought component parts in the United States, and the watches bearing the spurious Bulova mark entered the United States from Mexico, causing consumer confusion and harm to the plaintiff's domestic goodwill.

Circuit courts have turned Bulova into a multi-factor analysis. The best-known test is from the Second Circuit, where the court looks at three factors: (1) whether the defendant is a United States citizen; (2) whether there exists a conflict between the defendant's trademark rights under foreign law and the plaintiff's rights under United States law; and (3) whether the defendant's conduct has a substantial effect on United States commerce. See Alt. Richfield Co. v. Arco Globus Int'l Co., 150 F.3d 189, 192 (2d Cir. 1998).[2]

There is no dispute about the first two factors. Fivetech is not a United States citizen. That factor supports a lack of jurisdiction. There is no alleged conflict between Fivetech's trademark rights under foreign law and Southco's trademark rights under United States law. Although Fivetech notes that it has trademark protection outside of the United States, it does not offer evidence to support that claim or any argument on how a ruling by this Court would affect those

---

[2] The Ninth Circuit requires a showing of additional factors. Reebok Int'l, Ltd. v. Marnatech Enters., Inc., 970 F.2d 552, 554 (9th Cir. 1992). The First Circuit holds that there is jurisdiction if the defendant is a United States citizen, but if the defendant is a foreign citizen and the activities occurred abroad, the Lanham Act applies only if the defendant's actions have "substantial effects" on United States commerce. McBee v. Delica Co., 417 F.3d 107, 111 (1st Cir. 2005). In a nonprecedential opinion, the Third Circuit favorably cited the Second Circuit test. See Scanvec Amiable Ltd. v. Chang, 80 F. App'x 171, 181 (3d Cir. 2003).

rights.  This factor is either neutral or in favor of the exercise of jurisdiction.  On the third factor, the parties differ.

In Bulova, the Court focused on both the use of United States commerce to produce the defendant's products, and the misleading effects of the spurious mark entering the United States, including the harm to Bulova's goodwill from the mark. Therefore, in determining substantial effects, courts focus on those two elements.  Where there is a likelihood of confusion from the defendant's product entering the United States, the substantial effects test is satisfied.  See Fun-Damental Too, Ltd. v. Gemmy Indus. Corp., 111 F.3d 993, 1006-07 (2d Cir. 1997) (importing products into the United States has a substantial effect on United States commerce).  Where those two elements are absent, there is no substantial effect.

In Atlantic Richfield, the plaintiff alleged trademark infringement by the defendant, a small company with offices in the United States but no operations or sales of its products in the United States.  The court held that if an alleged infringer's use of a mark "does not mislead American consumers in their purchases or cause them to look less favorably upon the mark," and "the alleged infringer does not physically use the

stream of American commerce to compete with the trademark owner by, for example, manufacturing, processing, or transporting the competing product in United States commerce," and "none of the alleged infringer's American activities materially support the foreign use of the mark," then there is no substantial effect. 150 F.3d at 193-94.

That is the case here. There is no allegation that Fivetech uses the United States stream of commerce to manufacture, process, or sell any of its products, beyond the one sale to SRI already discussed. Southco argues that the presence of the Fivetech fasteners with the Five Pentagon mark in HP servers available in the United States has a substantial or significant effect on United States commerce. But there is no evidence that the presence of Fivetech fasteners in servers confuses purchasers of the HP servers or cause consumers to look less favorably upon Southco's Segmented Circle mark. Indeed, there is no evidence that those who buy HP servers are even Southco's consumers. Instead, the manufacturers of the servers are consumers of both Fivetech and Southco. In Bulova, the defendant's watches containing the infringed mark were making their way into the United States, damaging the plaintiff's goodwill among its customers. There is no allegation or

evidence in this case that Fivetech's fasteners are unknowingly being purchased by Southco customers.

Southco also argues that there is a disputed issue of fact on the effect of Fivetech's Taiwan and China sales on United States commerce, but Southco does not expand upon this statement. An American company's lost sales abroad because of trademark infringement can be considered when in the substantial effect analysis. Rodgers v. Wright, 544 F. Supp. 2d 302, 313 (S.D.N.Y. 2008). In many cases supporting this proposition, however, there are additional effects in the United States beyond the diverted sales. See, e.g., Am. Rice, Inc. v. Ark. Rice Growers Co-op. Ass'n, 701 F.2d 408, 415 (5th Cir. 1983) (production of infringing good occurred in United States); Software AG, Inc. v. Consist Software Solutions, Inc., No. 08-389, 2008 WL 563449, at *14 (S.D.N.Y. Feb. 21, 2008) (falsely advertised support services would be provided from a United States office); Warnaco Inc. v. VF Corp., 844 F. Supp. 940, 944, 950-51 (S.D.N.Y. 1994) (contracts between plaintiff and defendant negotiated in New York and governed by New York law).

Southco presents no evidence of activity by Fivetech in the United States involving the Five Pentagon mark, even when considering Southco's supplemental evidence. Southco does not

explain how Fivetech's activities outside the United States affect its trademark rights, except as already discussed. Therefore, Southco's claim does not support extraterritorial jurisdiction under the Lanham Act.

Because the Court finds that the Lanham Act does not apply, the Court need not address on the merits the parties' trademark infringement arguments regarding likelihood of confusion.

IV. <u>Motion to Supplement</u>

Southco filed a Motion to Supplement the Record (Docket No. 231) with additional evidence allegedly showing that Fivetech sells captive screws with the Five Pentagon mark in the United States. Southco seeks to admit the documents it calls the "Fivetech U.S. Shipping Documents," which include several website printouts from a business periodical, computer parts websites allegedly showing Fivetech merchandise for sale, and shipping documents from several commercial providers of U.S. Customs data. Southco argues that these documents show shipments of captive screws from Fivetech to Hon Hai Precision Industry in Houston, Texas, with arrival dates in the port of Los Angeles on March 12, 2012, May 15, 2012, and July 24, 2012.

Pl. Mot. Supplement, Sluzas Decl. ("Third Sluzas Decl.") ¶ 4, ECF No. 231-1.

In response, Fivetech submitted a declaration stating that Fivetech has not sold any Series 46 captive screws in the United States, other than the one sale to SRI in December 2009. Def. Opp. Mot. Supplement, Ex. A ¶ 5, ECF No. 247-1.

The Court will deny as moot this motion to supplement the record. The considers the evidence submitted by Southco for purposes of this motion, but the Court finds that the supplementary evidence introduced by Southco does not affect the Court's grant of Fivetech's motion for partial summary judgment of trademark noninfringement. First, neither the websites nor the other shipping documents show that Fivetech is selling captive screws with the Five Pentagon mark in the United States. Second, the Fivetech U.S. Shipping Documents have serious admissibility issues.

The evidence that Southco seeks to include in the record presents serious issues with regard to hearsay and authenticity. First, newspaper articles are considered hearsay and, only in very exceptional circumstances not present here, may be used as evidence during litigation. See May v. Cooperman, 780 F.2d 240, 262 n.10 (3d Cir. 1985).

Internet websites and web postings are also typically inadmissible as hearsay. United States v. Jackson, 208 F.3d 633, 637-38 (7th Cir. 2000). Although some commentators have argued that websites could be admissible as a business record under Rule 803(6), other federal courts have come out the opposite way. Compare 4 Christopher B. Mueller & Laird C. Kirkpatrick, Federal Evidence § 8:79 (3d ed.), with Aldana v. Del Monte Fresh Produce N.A., Inc., 578 F.3d 1283, 1291 n.3 (11th Cir. 2009).

District courts have also gone both ways with regard to the commercial lists hearsay exception under Rule 803(17). Compare Commercial Credit Grp., Inc. v. Falcon Equip., LLC of Jax, No. 3:09CV376-DSC, 2010 WL 144101, at *12 (W.D.N.C. Jan. 8, 2010), with Rainbow Play Sys., Inc. v. Backyard Adventure, Inc., No. 06-4166, 2009 WL 3150984, at *2-3 (D.S.D. Sept. 28, 2009).

Furthermore, even website evidence admissible under a hearsay exception requires authentication. See St. Luke's Cataract & Laser Inst., P.A. v. Sanderson, No. 8:06CV223TMSS, 2006 WL 1320242, at *2 (M.D. Fla. May 12, 2006) ("To authenticate printouts from a website, the party proffering the evidence must produce 'some statement or affidavit from someone with knowledge [of the website] . . . for example [a] web master

or someone else with personal knowledge would be sufficient.'" (quoting In re Homestore.com, Inc. Sec. Litig., 347 F. Supp. 2d 769, 782 (C.D. Cal. 2004))); see also Wady v. Provident Life & Accident Ins. Co. of Am., 216 F. Supp. 2d 1060, 1064-65 (C.D. Cal. 2002). This is a common problem with the evidence presented by Southco because no one with personal knowledge has given a sworn statement regarding these websites.[3]

Some of the specific shipping documents that Southco seeks to admit, bills of lading, are themselves admissible under the business records exception with appropriate foundation through affidavit, deposition, or other authentication method. See, e.g., United States v. Collado, 439 F. App'x 845, 848 (11th Cir. 2011); Sea-Land Serv., Inc. v. Lozen Int'l, LLC, 285 F.3d 808, 819-20 (9th Cir. 2002); Morrison Grain Co. v. Utica Mutual Ins. Co., 632 F.2d 424, 432 (5th Cir. 1980); Stein Hall & Co., Inc. v. S.S. Concordia Viking, 494 F.2d 287, 291 (2d Cir. 1974) (quoting Palmer v. Hoffman, 318 U.S. 109, 113 (1943)); United States Aviation Underwriters, Inc. v. Yellow Freight Sys., Inc., 296 F. Supp. 2d 1322, 1327 n.2 (S.D. Ala. 2003); see also CSX

---

[3] Southco does offer the signed affidavit of the co-founder and managing director of one of the websites compiling U.S. Customs Records, but that affidavit was filed in the Eastern District of Wisconsin in 2010 in an unrelated case. Pl. Reply Mot. Supplement, Sluzas Decl. ("Fourth Sluzas Decl."), Ex. C, ECF No. 248-1.

Transp. Co. v. Novolog Bucks Cnty., No. 04-4018, 2008 WL 4613862, at *5-6 (E.D. Pa. Oct. 16, 2008).  The websites sought to be admitted by Southco add an additional layer of potential hearsay, however, that requires further authentication of the website's source material.

V.  Conclusion

For the foregoing reasons, the Court denies as moot the Motion of Southco, Inc. to Supplement the Record (Docket No. 231) and grants Fivetech's Motion for Partial Summary Judgment of Noninfringement of U.S. Trademark Registrations 2,478,685 and 3,678,153 (Docket No. 198).

An appropriate Order shall issue.